### In re BEAN et al.

### In re QUIGLEY.

(Circuit Court of Appeals, Sixth Circuit. March 7, 1916.)

No. 2700.

1. BANKRUPTCY ⚌100(1)—CONCLUSIVENESS OF JUDGMENTS—MATTERS CONCLUDED.

The claimants entered into a contract with Q., whereby they agreed to procure by their indorsement of his notes additional capital for his business, and received a transfer of 49 per cent. of the business. Subsequently they discovered that Q. had misrepresented the condition of the business, and with Q.'s consent the contract was canceled. Claimants paid the notes indorsed by them and took Q.'s notes for the amount so paid. Q. was thereafter adjudicated a bankrupt; the claimants being among the petitioning creditors. Other creditors thereafter filed a petition

against claimants on the theory that they were partners of Q.; but on the hearing they dismissed the petition, when it was pointed out that the petition did not and could not truthfully allege the insolvency of one of the claimants. The referee allowed the claims of the claimants, but postponed their payment to the claims of creditors who became such while claimants were partners of the bankrupt. *Held*, that the adjudication in bankruptcy on the petition of the claimants was not an adjudication that the claimants were not partners, as, even though they were partners at one time, they had ceased to be, and were in the ordinary status of retired partners, who were creditors of the continuing sole owner of the business for the agreed purchase price of their interests, and as such were entitled to petition for and obtain an adjudication in bankruptcy.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 60, 142, 143; Dec. Dig. ☞100(1).]

2. BANKRUPTCY ☞100(1)—CONCLUSIVENESS OF JUDGMENTS—MATTERS CONCLUDED.

The dismissal of the petition in bankruptcy against the claimants was not an adjudication in their favor on the question of partnership, as it was voluntary, and amounted only to a nonsuit which adjudicates nothing, and moreover, had the court's action been invoked, its action would have rested on the point that one of the claimants was not insolvent; and would not have involved or decided the question of partnership.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 60, 142, 143; Dec. Dig. ☞100(1).]

3. PARTNERSHIP ☞20—CREATION OF PARTNERSHIP AS TO THIRD PERSONS.

Claimants entered into a contract with the bankrupt, whereby they agreed to indorse his notes in specified amounts, and he agreed to borrow such amounts from a bank and to gradually reduce the principal until the whole amount borrowed was paid in full. The agreement provided that the borrowed money was to be used in the bankrupt's business, that the bankrupt thereby transferred to the claimants 49 per cent. of the assets of such business to be divided between them equally, that the bankrupt should retain possession of 51 per cent. of the business and assets and should be manager at a specified salary and devote his entire time to the business and make statements from time to time to the claimants, which should be verified by investigation, if desired, that the business should be conducted under the bankrupt's name, that all of the assets of the business were to be used for merchandising purposes at the "location of the partnership" at the bankrupt's place of business, that the business should be conducted in an economical manner and be open at all times to the inspection of the claimants, and that all checks and payments should be signed and countersigned by the bankrupt and one of the claimants. *Held* that, while some provisions of the contract were not inconsistent with the view that the transfer of the interest in the business was only by way of security or indemnity against the indorsements, the contract as a whole made it reasonably clear that the parties intended to create those rights and interests from which the relation of partnership and its attendant liabilities must be inferred, though, as found by the referee, the parties did not hold themselves out as partners, nor think they were partners, and the bankrupt was the only person known to creditors when credits were extended.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 6, 7; Dec. Dig. ☞20.]

4. BANKRUPTCY ☞446—PETITION TO REVISE—REVIEW OF QUESTIONS OF FACT.

On a petition to revise an order in bankruptcy, the court cannot determine conflicting inferences of fact, though the substance of the evidence is embodied in an agreed statement.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 929; Dec. Dig. ☞446.]

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Petition to Revise Order of the District Court of the United States for the Eastern Division of the Southern District of Ohio; John E. Sater, Judge.

In the matter of Harry Quigley, bankrupt. On petition by R. H. Bean and another to revise an order postponing their claims to certain other claims. Order affirmed.

Quigley, the bankrupt, was engaged alone in the retail furniture business. On September 28, 1912, Bean & Lupfer (and others) entered into a written contract with Quigley whereby they agreed to procure, by their indorsements, additional capital for the business, and whereby they received a transfer of 49 per cent. of the business. The contract seemed to be carefully drawn and covered many details. It is copied in the margin.[1] On October 28th they discovered that Quigley had misrepresented the condition of the business. With Quigley's consent, the contract was canceled, and Quigley gave to Bean & Lupfer, severally, his notes for the amounts which had gone into the business on account of their indorsements, and they paid up the indorsed obligations to the same amount. On December 11th Quigley was adjudicated bankrupt; Bean & Lupfer, in right of the notes so given, being among the petitioning creditors.

It soon developed that the contract of September 28th was believed to create a partnership between Quigley and the others, and on December 17th certain alleged creditors of this partnership filed a petition in bankruptcy against them, alleging the existence of such partnership and the resulting lia-

---

[1] Article of agreement by and between Harry Quigley, party of the first part, and George B. Lupfer, R. H. Bean, and O. P. Blue, parties of the second part.

Harry Quigley agrees to borrow from the National Bank of Commerce, or other agreed banks, amounts equaling fifteen hundred dollars total, to pay the interest on the amounts and to gradually reduce the principal as the notes mature, until the whole amount borrowed is paid in full. The amounts up to fifteen hundred dollars are to be borrowed on three months' time.

Said Geo. B. Lupfer, R. H. Bean, and O. P. Blue agree to indorse for said Harry Quigley as follows: Geo. B. Lupfer will indorse for $500, and said R. H. Bean will indorse for $500, and said O. P. Blue will indorse for $500—making the total amount fifteen hundred dollars, the first amount above stated.

Both parties of the first part and of the second part agree that the total amount borrowed from the National Bank of Commerce or any other bank or banks shall be fifteen hundred dollars, which money is to be used wholly and solely in the conduct of the business located at No. 344 N. High street, to buy stock, settle accounts and pay the necessary expenses of the business.

In return for these indorsements said Harry Quigley *transfers to said parties of the second part*, Geo. B. Lupfer, R. H. Bean, and O. P. Blue, *forty-nine per cent. of the assets* of the business at No. 344 N. High St., stock, fixtures; also all other assets and accounts *to be divided between them equally.*

It is agreed by the parties of the second part that Harry Quigley shall *retain possession of fifty-one per cent.* of the business at No. 344 N. High St., stock, fixtures and accounts and all other assets.

It is further agreed by the parties of the first part and second part that the said Harry Quigley *shall be manager* of the business located at No. 344 N. High St., *at a salary* not to exceed $20 weekly for the ensuing year, *shall devote his time entire* to the conduct of the business and *shall make statements from time to time to parties of the second part* which shall be verified by investigation of parties of the second part if desired. It is also further agreed that the business shall be *conducted under the name of Harry Quigley.*

It is further agreed that all of the assets of the business, stock, accounts and fixtures are to be used for merchandising purposes *at the location of the partnership* at No. 344 N. High St., Columbus, Ohio. The present financial statement is as follows:

| | |
|---|---|
| Stock and fixtures | $2,925.01 |
| Accounts | 1,743.28 |
| Total | $4,668.29 |
| Indebtedness | 2,747.42 |
| Net assets | $1,920.87 |

It is further agreed that the business shall be conducted in an economical manner, and shall be open at all times to the inspection of parties of the second part. It is further agreed that *all checks and payments* shall be signed and *countersigned* by Harry Quigley and *O. P. Blue.*

In witness both parties of the first part and second part hereunto set their signatures.

Party of the First Part, Harry Quigley.
Party of the Second Part, O. P. Blue,
Riley H. Bean.
Geo. P. Lupfer.

bility of the individuals. When, however, upon the hearing of the order to show cause, it was pointed out that the petition did not allege the insolvency of Lupfer, one of the alleged partners, and that it could not truthfully do so, the petitioning creditors dismissed this petition. Whereupon Bean & Lupfer presented their notes for allowance as claims against the bankrupt estate of Quigley; objection to the allowance was made upon the ground that Bean & Lupfer were partners; and the referee held that the contract did in fact create a partnership, but that the notes were, nevertheless, allowable as claims against Quigley. He cared for the respective rights of Bean & Lupfer on one side, and the creditors of this partnership on the other side, by providing that on the claims so allowed any dividends which might become payable should be paid, not to Bean & Lupfer, but to those creditors of Quigley who became such between September 28th and October 28th, thereby, in effect postponing Bean & Lupfer, as creditors of Quigley, to the creditors of Quigley, Bean & Lupfer. Upon Bean & Lupfer's petition for review, the District Judge affirmed the referee in all respects; and they bring this petition to revise.

Charles J. Pretzman and John W. Wilson, both of Columbus, Ohio, for petitioners.

A. H. Johnson, of Columbus, Ohio, for trustee.

Raymund & Hedges and Watson, Stouffer, Davis & Gearheart, all of Columbus, Ohio, for creditors.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

DENISON, Circuit Judge (after stating the facts as above). [1,2] 1. Bean & Lupfer urge that the question of partnership or not has been twice adjudicated in their favor: First, when their status as creditors of Quigley was fixed by the adjudication in bankruptcy based on their petition; and, second, when the petition, alleging that they were partners, was dismissed. Neither branch of this position is tenable. Even if Bean & Lupfer were partners until October 28th, they then ceased to be, and they were in the ordinary status of retired partners who were creditors of the continuing sole owner of the business for the agreed purchase price of their interests. No reason is suggested why such creditors may not petition for and obtain an adjudication in bankruptcy; and such adjudication has no bearing upon the question whether the petitioning creditors had, at some former time, been partners of the one against whom they file their petition. The dismissal of the second petition in bankruptcy was not only voluntary, amounting only to that nonsuit which adjudicates nothing, but the meritorious point upon which the action of the court would have rested if that action had been invoked, viz., that Lupfer was not insolvent, did not involve and so could not have decided the question of partnership.

[3, 4] 2. We are not inclined to discuss at length the effect of the contract. This was fully and satisfactorily done, both by the referee and by the District Judge. It is claimed that the transfer of the interest in the business was only by way of security or indemnity against the indorsements, and some provisions of the contract are not inconsistent with this view; but we think the contract, as a whole and on its face, makes it reasonably clear that the parties actually intended to create those respective rights and interests from which the relation

of partnership and its attendant liabilities must be inferred. We have put in italics those parts of the margin-quoted contract which are persuasive to this effect. The substance of the evidence is embodied in an agreed statement; but we cannot, on this petition to revise, determine any conflicting inferences of fact. There is nothing to dispute the inferences to be drawn from the contract itself which goes beyond the referee's finding:

"A partnership did not exist in fact; that is, the parties did not hold themselves out as partners, nor did they think they were partners, and Quigley was the only person known to any of the creditors when credits were extended."

This finding, self-explained as it is, is not sufficient to require the overturning of the finding that in law there was a partnership, nor to show that the parties did not in fact intend to do those things which by law made them partners.

The action of the District Judge, confirming that of the referee, is affirmed.